UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CONSUMERS PRODUCE CO., INC. and
CHIQUITA BRANDS, INC.,

                                    Plaintiffs,

                -vs-                                            04-CV-295C(SR)

M&T CHIRICO, INC., ANTHONY H. CHIRICO
and MARIANO L. CHIRICO,

                                    Defendants.
_____


        In this action, plaintiffs Consumers Produce Co., Inc. ("Consumers") and Chiquita

Brands, Inc. ("Chiquita") seek to enforce the statutory trust provisions of the Perishable

Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c), against defendants M&T

Chirico, Inc. ("M&T Chirico"), and Anthony H. Chirico and Mariano L. Chirico individually.

Plaintiffs have moved for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure (Items 12 and 13).   For the following reasons, plaintiffs' motions are

granted.


## BACKGROUND

        The following facts are not in dispute.   Plaintiffs are corporations engaged in the

business of buying and selling wholesale quantities of perishable agricultural commodities

in interstate commerce.   At the time of the events described in the complaint, defendant

M&T Chirico was engaged in the business of buying wholesale quantities of produce in

interstate commerce.   Defendants Anthony and Mariano Chirico were the officers and

directors of M & T Chirico, and managed the day-to-day operations of the company.  In September 2004, after seventy-five years in the produce business, M&T Chirico filed a petition for Chapter 7 bankruptcy protection.  The petition is currently pending with the United States Bankruptcy Court for the Western District of New York.

Between December 2003 and March 2004, Consumers sold and delivered various wholesale lots of produce to M&T Chirico, Inc. on credit, worth $22,306.74.  Between January and March 2004, Chiquita sold and delivered various wholesale lots of produce to M & T Chirico, Inc. on credit, worth $40,038.50.  The combined amount of $62,345.24 remains unpaid.  Plaintiffs have preserved their interests in the unpaid amounts under the trust provisions of PACA by sending invoices to defendants which contain the language required by the statute.

The complaint in this action was filed in April, 2004, setting forth causes of action for failure to pay for goods sold, unlawful dissipation of PACA trust assets by corporate officials, and failure to pay trust funds.  Plaintiffs now move for summary judgment as beneficiaries of the trust imposed under PACA, for the combined unpaid amount of $62,345.24.  Defendants Anthony Chirico and Mariano Chirico respond that they should not be held personally liable under PACA for the debts of M&T Chirico or, in the alternative, should only be held liable for those assets which M&T Chirico received for resale of the produce to third-party purchasers.

## DISCUSSION

### I.      Summary Judgment Standards

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As alluded to above, the material facts of this case are not in dispute, and plaintiffs have requested judgment as a matter of law on their PACA claims.

The questions presented for the court to determine are:

1.      Whether defendants Anthony Chirico and Mariano Chirico, as officers and owners of M&T Chirico, Inc., may be held personally liable under PACA; and,

2.      If so, whether recovery should be limited to the amount received in payment for resale of the produce to third-party purchasers.


### II.     Personal Liability Under PACA

Enacted by Congress in 1930 to regulate the sale of perishable agricultural commodities, and amended in 1984 "to broaden the protections afforded to produce suppliers," *Top Banana, L.L.C. v. Dom's Wholesale & Retail Center, Inc.*, 2005 WL 1149774, at *4 (S.D.N.Y. May 16, 2005), PACA "imposes a statutory trust on any perishable commodities or their derivatives received by a commission merchant, dealer, or broker and on any receivables or proceeds from the sale of such commodities or

products for the benefit of all unpaid sellers, suppliers, and agents until full payment is made." *D.M. Rothman & Co., Inc. v. Korea Commercial Bank of New York*, 411 F.3d 90, 93 (2d Cir. 2005) (citations and internal alterations omitted); *see* 7 U.S.C.A. § 499e(c).[1]

As articulated by Judge Sand in *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346 (S.D.N.Y. 1993), the PACA trust:

> arises from the moment perishable goods are delivered by the seller. An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act. This legal framework is to be distinguished from the piercing the veil doctrine, where the corporate form is disregarded because the individual has either committed a fraud, or because the corporation is a "shell" being used by the individual shareholders to advance their own purely personal rather than corporate ends.

*Id.* at 348.

By overwhelming majority, the courts have held that PACA imposes individual liability on corporate officers, shareholders, or other persons in the position to control the

---

[1] 7 U.S.C.A. § 499e(c) provides, in pertinent part:

(1) It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller, or agent receives a payment instrument which is dishonored. . . .

trust assets for repayment of amounts due to the supplier.  This includes every circuit court to have addressed the issue, *see Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415, 421 (3d Cir. 2005) (citing *Morris Okun*); *Red's Market v. Cape Canaveral Cruise Line, Inc.*, 181 F. Supp.2d 1339, 1343-44 (M.D.Fla.) (citing *Morris Okun*), *aff'd*, 48 Fed.Appx. 328, 2002 WL 2001204 (11th Cir. 2002); *Patterson Frozen Foods v. Crown Foods Int'l*, 307 F.3d 666, 667-68 (7th Cir. 2002); *Golman- Hayden Co., Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000); *Hiller Cranberry Products, Inc. v. Koplovsky*, 165 F.3d 1, 9 (1st Cir. 1999) (citing *Morris Okun)*; and *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280 (9th Cir. 1997), as well as virtually every district court within the Second Circuit.  *See Top Banana*, 2005 WL 1149774, at *5 (citing cases).

Defendants rely on *Farm-Wey Produce, Inc. v. Wayne Bowman Co., Inc.*, 973 F. Supp. 778 (E.D. Tenn. 1997), which is the only case found by this court's exhaustive research holding that an individual in the position to control the PACA trust assets of a corporate broker in perishable agricultural commodities could not be held personally liable for repayment of amounts due to the supplier.  It is important to note that at the time *Farm-Wey* was decided, the Ninth Circuit's decision in *Sunkist Growers* was the only published circuit court authority, and its holding is directly contrary to the holding in *Farm-Wey*.  Since then, the First, Third, Fifth, Seventh, and Eleventh Circuits have reached the same result as the Ninth Circuit.

Accordingly, given the weight of authority on this issue, the court finds individual defendants Anthony Chirico and Mariano Chirico, as officers and directors of M&T Chirico who managed the day-to-day operations of the company and were in positions of control

over PACA trust assets during the time period in question, personally liable for the amounts owed to Consumers and Chiquita.

### III.     Limitation of Recovery

The individual defendants contend that, in the event the court finds them personally liable for breach of their fiduciary duties to preserve PACA trust assets for the benefit of plaintiffs, they should not be held responsible for amounts not received in payment for resale of the produce to third-party purchasers.  This argument once again relies upon the questionable holding in *Farm-Way*, and is contrary to the weight of authority in the Second Circuit.

For example, in *Bronia, Inc. v. Ho*, 873 F. Supp. 854 (S.D.N.Y. 1995), Judge Conner explained that PACA's regulatory scheme imposes personal liability upon individual corporate officers for dissipation of PACA trust assets regardless of the inability to collect proceeds from the resale of the commodities:

> Under USDA regulations, the trust corpus consists of all perishable agricultural commodities received in the transactions, products derived from those commodities, and proceeds from their sale.  7 C.F.R. § 46.46(c).  The regulations further require [the corporation], and hence [the individual officer], to maintain the trust assets "in a manner that such assets are freely available to satisfy the outstanding obligations to sellers of perishable agricultural commodities."  7 C.F.R. § 46.46(d).  Any act inconsistent with this duty, including dissipation of the trust assets, is actionable. *Id* .
>
> Defendant argues that since [the corporation] did not "dissipate" the trust assets, but instead attempted to collect the proceeds from the resale of the commodities, he should not be liable. Defendant apparently misunderstands the duties of a trustee. The fact that [the corporation] attempted but failed to collect this money does not satisfy its duty to the plaintiffs.  The trust corpus extends to both the produce and the proceeds from its sale.  Relinquishing control of the commodities without securing

payment is "dissipation of the trust assets."  Similarly, failing to turn over the trust assets when payment is due to the produce sellers breaches [the corporation]'s fiduciary duty to make the trust assets "freely available" to the plaintiffs.

*Bronia*, 873 F. Supp. at 860-61; *see also Top Banana*, 2005 WL 1149774, at *6.

Based on this persuasive authority, the court finds individual defendants Anthony H. Chirico and Mariano L. Chirico legally responsible for ensuring that the PACA trust assets were not dissipated and were freely available to pay plaintiffs the entire combined amount of $62,345.24.

## CONCLUSION

For the foregoing reasons, the summary judgment motions of plaintiffs Consumers Produce Co., Inc. (Item 12) and Chiquita Brands, Inc. (Item 13) are granted.  The Clerk of the Court is directed to enter judgment against defendants Anthony H. Chirico and Mariano L. Chirico, jointly and severally, in the amount of $62,345.24, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   September 30, 2005
p:\pending\2004\04-295.sept27.05.sj